## N. P. SLOAN CO. v. STANDARD CHEMICAL & OIL CO.

(Circuit Court of Appeals, Fifth Circuit. November 8, 1918. Rehearing Denied December 19, 1918.)

### No. 3249.

ARBITRATION AND AWARD ⟷82(1)—CONCLUSIVENESS.
   Although an agreement to arbitrate may not be binding, yet if the parties submit the controversy to arbitration, the award is binding, unless affected by fraud, partiality, or other improper conduct of the arbitrators.

In Error to the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Action by the N. P. Sloan Company against the Standard Chemical & Oil Company. Judgment for defendant, and plaintiff brings error. Reversed.

This was an action by the plaintiff in error against the defendant in error. The sustaining of a demurrer to counts 5 and 6 of the complaint

as amended is assigned as error. The following is a copy of count 5 as amended:

"5. Plaintiff further claims of the defendant the further sum of $9,163.74, with interest thereon from the 8th day of August, 1916, for that heretofore, to wit, on the 23d day of June, 1915, plaintiff and defendant were regular members of a voluntary association known as the Interstate Cotton Seed Crushers' Association, which had regularly adopted a constitution and by-laws and official rules governing transactions in cotton seed products between the members of such association, which were in full force and effect on said 23d day of June, 1915. Section 2 of article I of the constitution of said association provides that said association shall have power 'to enact laws for its government and the government of its members, and rules governing all transactions in cotton seed products by and between its members and to provide and enforce penalties for any violation thereof.' And by section 8 of article V of said Constitution it was provided that immediately after the close of each annual session committee on arbitration of five members each should be appointed at Dallas, Texas, and other places named, and plaintiff avers that the committee on arbitration for Dallas, Texas, was, immediately after the close of the annual meeting of said association which was held at Birmingham, Alabama, on, to wit, May 17, 18, 19, 1915, duly appointed. That by section 7 of article II of the by-laws of said association it was provided as follows: 'The arbitration committee provided for in article V, section 8, of the constitution, shall perform their duties in conformity with the rules of said association.'

"That rule 15, section 3, of said association, was in force on said 23d day of June, 1915, and provided as follows: 'Section 3. When a sale is made of season's or balance of season's output of linters, the seller must ship and the buyer must receive all linters seller makes to the end of the season: Provided, that when estimated number of bales is stated in contract or in confirmation of sale or purchase, the buyer may demand and seller must ship, or may ship whether demanded or not, 15 per cent. in excess of estimated quantity if he makes a sufficient number of bales to enable him to do so, and buyer must receive and pay for same at contract price. Should seller not make the quantity estimated, he shall deliver the number of bales made, and shipment of 85 per cent. of the estimated quantity shall be deemed a fulfilment of the contract. The limitation of each season shall be the 31st of July, so that each season's output of linters shall include everything made up to July 31st.'

"And plaintiff avers that while the plaintiff and the defendant herein were members of said association they made and entered into a written contract, a copy of which is hereto attached, marked Exhibit A, and made a part hereof, for the sale by the defendant to the plaintiff of the cotton linters therein referred to. That under said contract the defendant, between the 23d day of June, 1915, and the 31st day of July, 1916, delivered to plaintiff 1,324 bales of linters, and thereafter refused and failed to deliver 376 bales of said linters of the aggregate weight of, to wit, 192,921 pounds, the balance due plaintiff under said contract, although plaintiff was at all times ready, able, and willing to accept and pay for said linters as provided in said contract, the defendant claiming that by the terms of said contract it was not obligated to deliver said 376 bales or said 192,921 pounds of linters, or any part thereof, and plaintiff having agreed and contracted to sell said 376 bales of linters to another party, was compelled to and did purchase the same in the open market and paid therefor eight and one-quarter (8¼) cents a pound, the market value of said linters at, to wit, time of the breach by the defendant of the contract sued on, amounting to, to wit, $15,915.98, less freight to New York of $964.61, making a difference between the contract price and the price which the plaintiff had to pay for said 376 bales of linters $9,163.74, to the damage of plaintiff as aforesaid.

"And plaintiff avers that by rule 36 of said association, which was in force during the year 1916, it was provided that in case of differences between members of the association concerning transactions in cotton seed products, the same should be settled by arbitration upon the application of either of said

members, and said rule contains the following: 'And it is fully understood and agreed by and between the members of this association that any award that any of the regular arbitration committees of this association make under this rule, whether such arbitration is held by agreement or ex parte, shall be binding upon all the parties affected hereby, and such award, if final at the instance of any party affected by it, may be made the judgment of any court of competent jurisdiction without other evidence of such award.'

"And plaintiff avers that the differences between the plaintiff and the defendant herein over the said contract of June 23, 1915, were duly and regularly referred to the regular committee on arbitration of said association at Dallas, Texas, and was by said committee on arbitration, after due notice to the defendant herein heard and determined and said arbitration committee thereupon or thereafter did duly render its award in writing in accordance with the rules and regulations of said association, copy of which award, which bears date the 28th day of August, 1916, is hereto attached, marked Exhibit B, and prayed to be taken as a part hereof. And plaintiff avers that in and by said arbitration and said award, the defendant became liable to pay to the plaintiff the sum of $9,163.74, with interest, wherefore plaintiff sues.

"And plaintiff avers that between the execution of said contract and the 31st day of July, 1916, the market value of linters advanced in price from, to wit, 3 cents per pound to, to wit, 8¼ cents per pound, and by reason of the failure of the defendant to deliver said 376 bales of linters of the aggregate weight of 149,686 pounds, as it had contracted and agreed to do, plaintiff has been deprived of sundry great gains and profits which he might have and would have otherwise acquired to himself by re-selling the said 376 bales of linters at much higher and advanced prices, to wit, 8¼ cents per pound, amounting in the aggregate to a large sum, to wit, $7,312.16. Wherefore plaintiff sues."

### Exhibit A.

"Original.

"N. P. Sloan Company, Cotton and Cotton Linters.

"No. 101.                                                      Philadelphia, Pa., 6/23/15.

"Confirmation of Purchase from Standard Chemical & Oil Co., Troy, Ala.

"Gentlemen: We confirm the following purchase made this day from you:

"Quantity—next season's production of linters estimated 2,000 bales.

"Product—linters.

"Quality—clean average mill runs.

"Price—3c f. o. b., Troy.

"Terms—sight draft bill of lading attached.

"Delivery—1 and 200 bale lots as produced.

"Special—linters to be packed in bales not to exceed 27"x54" and not to weigh more than 550# or less than 400#.

"Any difference between buyer and seller, which cannot be settled direct, shall be settled by arbitration at Dallas in accordance with the rules and regulations of Interstate Seed Crushers' Association.

"Accepted: Standard Chemical & Oil Co., by [Signed] Frank L. Jones, D. Manager N. P. Sloan Company, by W. H. Dunn, Secy.

"This contract is made in duplicate; please sign both copies, and return one."

### Exhibit B.

"The Interstate Cotton Seed Crushers' Association.

"Dallas, Texas, August 28, 1916.

"N. P. Sloan Co., Philadelphia, Pa., v. Standard Chemical & Oil Co., Troy, Ala. (Ex Parte).

"The question to be decided by the arbitration: 'Whether Standard Chemical & Oil Company shall pay the N. P. Sloan Co. loss incurred in replacing 376 bales of linters balance due on contract as per proof submitted.'

"The verdict of the committee is that for the fulfillment of this contract the Standard Chemical & Oil Co. should deliver to the N. P. Sloan Co. a mini-

mum quantity of 1,700 bales of linters of an average weight of 475 pounds per bale, or 807,500 pounds at three cents (3c) per pound.

"There is no evidence presented to the committee as to the quantity actually delivered, but this is known to buyer and seller, and deducting this quantity from the 807,500 pounds will give the pounds still due, and the purchase of the N. P. Sloan Co. against the deficiency claimed establishing the price, the Standard Chemical & Oil Co. should pay the N. P. Sloan Co. an amount equal this deficient number of pounds, at the price delivered New York, less the freight from Troy, Ala., and the contract price.

"Costs of this arbitration to be paid by the N. P. Sloan Co. and included in their claim against the Standard Chemical & Oil Co.

> "P. G. Claiborne, Chairman.
> "J. W. Allison.
> "W. F. Pendleton.
> "J. S. Le Clercq."

The following is a copy of count 6:

"Count 6. For count 6 the plaintiff adopts all of count 5 as amended, and makes it a part hereof as if fully set out herein, and avers that rule 38 of the Interstate Cotton Seed Crushers' Association provides that all transactions between members of this association as to cotton seed products shall be governed by the rules of the association and that contracts between members shall be subject to all rules of the association."

The demurrer to the two counts above set out was on the ground stated in the opinion.

John London and Geo. W. Yancey, both of Birmingham, Ala., for plaintiff in error.

Fred S. Ball and Edmund R. Beckwith, both of Montgomery, Ala., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

WALKER, Circuit Judge (after stating the facts as above). The only ground stated in the demurrers to counts 5 and 6 of the complaint as amended was that—

"The alleged award therein counted on is null and void, because the alleged agreement to refer said matters to said arbitration was null and void as an attempt to oust the jurisdiction of the courts."

That demurrer raised no question of the sufficiency of the allegations of the complaint as to the existence of a difference or dispute between the parties or as to the submission by them of that dispute or difference to the committee mentioned for arbitration. Nor did the demurrer question the sufficiency or validity of the alleged award upon any ground other than that the alleged arbitration agreement was legally invalid, with the result that any award made in pursuance of it is without binding or enforceable effect.

It may be assumed that the pleaded arbitration agreement was not a binding or enforceable one, and that its existence prior to the award constituted no obstacle to a resort to the courts by either of the parties to it for the settlement of any difference or dispute arising between them. Though a submission to arbitration in pursuance of the agreement was revocable at any time before the making of an award, it does not follow that an award made under an unrevoked submission

pursuant to the agreement and the submission is without binding effect. After an agreement to arbitrate has been executed or consummated by the making of an award following a submission by both parties, which was unrevoked when the final action of the arbitrators was taken, the award so made is not deprived of binding effect by the circumstance that before it was made the arbitration agreement did not stand in the way of either party resorting to the courts for the settlement of the controversy. Where parties submit matters in controversy to arbitration, and an award is made pursuant to the agreement of submission, such award is final and binding on the parties, unless the arbitrators are guilty of fraud, partiality, or other improper conduct in making it. Gardner v. Newman, 135 Ala. 522, 33 South. 179; Williams v. Branning Mfg. Co., 154 N. C. 205, 70 S. E. 290, 47 L. R. A. (N. S.) 337, and note; 5 Corpus Juris, 43, 163; 2 R. C. L. 366. Neither of the two counts in question was subject to objection on the ground stated in the demurrer.

Because of the error committed in sustaining the demurrer, the judgment is reversed.